**E-FILED**
**CNMI SUPREME COURT**
E-filed: Jun 14 2023 05:06PM
Clerk Review: Jun 14 2023 05:07PM
Filing ID: 70194179
Case No.: 2023-SCC-0005-PHV
NoraV  Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

IN RE PRO HAC VICE ADMISSION OF JAMES ROBERT KINGMAN.

Supreme Court No. 2023-SCC-0005-PHV

---

ORDER DENYING MOTION FOR RECONSIDERATION

Cite as: 2023 MP 6

Decided June 14, 2023

————————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

————————

PER CURIAM:

¶ 1 Ralph DLG. Torres ("Torres") moves for reconsideration of our Order admitting James Robert Kingman ("Kingman") pro hac vice. We find no material deficiencies in the application which warrant revoking Kingman's admission to practice pro hac vice. We DENY the motion.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 In March 2023, Chief Solicitor J. Robert Glass, Jr. ("Glass") applied for Kingman's pro hac vice admission to act as a special prosecutor in *Commonwealth of the Northern Mariana Islands v. Ralph Anthony Deleon Guerrero Torres*, Superior Court Case Number 22-0050-CR. The application explained that Kingman "is a practitioner in Texas with a long history of prosecutorial experience, including public corruption and white-collar crime" and stated he would serve as a special prosecutor. The application also contained Kingman's certificate of good standing in Texas and indicated that he would associate with the Office of the Attorney General as local counsel.

¶ 3 On March 6, we issued an Order admitting Kingman pro hac vice. Torres learned of the admission through media reports and filed an Open Government Act request with the Office of the Attorney General ("OAG") for documents related to Kingman.

¶ 4 OAG responded to Torres' request and made documents pertaining to Kingman's pro hac vice admission available for inspection. An employee of a law firm representing Torres inspected the documents and received a copy of the Order. On April 26, Torres filed a Motion to Reconsider the Order admitting Kingman.

## II. JURISDICTION

¶ 5 The Supreme Court "has plenary control over who may practice law in the Commonwealth." *In re David York*, 2010 MP 11 ¶ 11. NMI CONST. art. IV, § 9 gives us the authority to propose rules "governing . . . admission to and governance of the bar of the Commonwealth." In addition, NMI CONST. art. IV, § 3 provides that the Supreme Court has "all inherent powers," one of which is the power to admit and suspend attorneys. *See Enquire Printing & Pub. Co. v. O'Reilly*, 477 A.2d 648, 650 (Conn. 1984) ("state courts possess the inherent power to regulate admission to the bar."); *In re Snyder*, 472 U.S. 634, 645 n.6 (1985) ("Federal courts admit and suspend attorneys as an exercise of their inherent power."). We have heard challenges to pro hac vice applications. *See In re David York*, 2010 MP 11 ¶ 2.

## III. ISSUES RAISED AND STANDARD OF REVIEW

¶ 6 We review motions to reconsider for an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Commonwealth v. Guerrero*, 2014 MP 4 ¶ 2. Torres raises four grounds for revoking Kingman's admission:

1. The Commonwealth did not serve Torres with notice of the pro hac vice application as mandated in NMI Sᴜᴘ. Cᴛ. R. 21-1;

2. The application fails to articulate "why the client requires the attorney's representation before the Commonwealth courts," as required by NMI Sᴜᴘ. Cᴛ. R. 73-1(b);

3. The application fails to comply with the sworn affidavit requirement of NMI Sᴜᴘ. Cᴛ. R. 73-1(e); and

4. Pro Hac Vice is not the appropriate admissions rule for a special prosecutor in a criminal case.

## IV. Dɪsᴄᴜssɪᴏɴ

### A. Whether Torres Has Standing to Contest Kingman's Admission

¶ 7    The Commonwealth argues that Torres lacks standing to challenge Kingman's admission under *In re Estate of Moteisou*, 2023 MP 3 ¶ 12. In *Moteisou*, we held that someone without an interest in an estate did not have standing to initiate probate of that estate. *Id.* at ¶ 1. However, the standing discussion in *Moteisou* is concerned with whether a person has an interest in a matter that is sufficient to initiate litigation and thereby invoke the subject matter jurisdiction of the superior court. *Id.* ¶¶ 10–11; *see also* NMI Cᴏɴsᴛ. art. IV, § 2. By contrast, our jurisdiction over attorney admissions flows from Sections 3 and 9 of Article IV of the NMI Constitution. *See supra* ¶ 6. The issue of whether Torres has standing is not one affecting our jurisdiction over this matter.

¶ 8    In addition, we, along with other courts, have permitted opposing parties to challenge pro hac vice admissions. *In re David York*, 2010 MP 11; *United States v. Howell*, 936 F. Supp. 767, 768 (D. Kan. 1996); *Cont'l Cas. Co. v. Compass Bank*, No. CA 04-0766-CB-C, 2005 U.S. Dist. LEXIS 53224, at *1 (S.D. Ala. Nov. 9, 2005); *In re De Luna*, 60 V.I. 683, 684 (V.I. 2014). It is sound policy to permit opposing litigants to inform us of problems with a pro hac vice admission that were not visible on the face on the application. We reject contention that the Motion to Reconsider should be dismissed for lack of standing.

### B. Commonwealth's Opposition to Torres' Motion to Reconsider

¶ 9    Torres asserts that we should deem the Motion to Reconsider unopposed because it was the Commonwealth, not Kingman himself, that filed an opposition. He requests that we disregard the Commonwealth's opposition because it does not assert that it represents Kingman in connection with the pro hac vice admission and does not offer any authority or argument that it can represent a Commonwealth contractor in litigation.

¶ 10    We decline to grant the Motion as unopposed. Torres does not identify any caselaw, court rule, or statute standing for the proposition that a response to a challenge to a pro hac vice admission can be filed only by the attorney in his or her personal capacity. Even if the Commonwealth remained silent, we still would

not grant the Motion summarily simply because it was not opposed. "The fact that [the] Motion for Reconsideration was unopposed when decided is inapt . . . the court is not required to grant every unopposed motion." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355–56 (5th Cir. 1993). *See also Nunez v. Nunez*, 196 B.R. 150, 156 (B.A.P. 9th Cir. 1996) ("The granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion."); *In re Bunge*, No. 17-44245, 2018 Bankr. LEXIS 1153, at *5 (Bankr. W.D. Wash Apr. 16, 2018) ("A court's exercise of its discretion to refuse to sustain an unopposed motion is to find that the relief requested has no basis in the applicable law."). The fact that Kingman himself did not file an opposition is irrelevant; we will consider the Commonwealth's arguments.

### C. Timeliness

¶ 11     The Commonwealth contends the Motion for Reconsideration is untimely. NMI Supreme Court Rule 27-2(d)(1) permits a motion for reconsideration "within 10 days after being served with a copy of the order." Here, the Order admitting Kingman was issued on March 6, and Torres' Motion was not filed until April 26—well outside the 10-day window. However, Torres contends that the 10-day period does not bar his Motion because he was never served with the Order.

¶ 12     Service of Supreme Court orders is governed by NMI Supreme Court Rule 45(c), which provides that "[u]pon the entry of an order or judgment, the Clerk must immediately serve a notice of entry on each party, with a copy of any applicable opinion, and must note the date of service on the docket." However, when the order admitting Kingman was issued on March 6, Torres was not a party to the admission proceeding. Accordingly, the Clerk of the Supreme Court was not under a duty to serve Torres with the Order, and Torres' motion is not barred by Rule 27-2(d)(1).

### D. Service

¶ 13     We next consider whether the application was materially deficient because it was never served on Torres. Pro hac vice applications are governed by Supreme Court Rule 73-1. Under this Rule, an application must demonstrate the attorney's eligibility, provide a certificate of good standing, and designate a local attorney for association, among other requirements. However, Rule 73-1 is silent regarding service of applications.[1] Because no duty to serve exists in our Rules, we decline to create one by Order.

¶ 14     We disagree with Torres' claim that NMI Supreme Court Rule 21-1 mandates service. Rule 21-1 is titled "Original Actions." It provides:

> An application to this Court seeking consideration of any matter
> over which it has original jurisdiction, such as an action pursuant to

---

[1]     By contrast, California and Guam explicitly require service of pro hac vice applications. *See* California Rule of Court 9.40(a); Guam Rule of Admission 8.01(d)(1).

Article II, Section 4(b) of the NMI Constitution, must be made by filing a petition with the Clerk with proof of service on the respondents. Proceedings on the application must conform, so far as is practicable, to the procedures prescribed in Rule 21(a), (b), and (d).

¶ 15    Under Rule 21-1, certain applications to the Supreme Court must be served on "respondents." The term "respondents" is not addressed in the definition section of our Supreme Court Rules. *See* NMI SUP. CT. R. 1-1. However, the term appears only in Rule 21-1 and in Rule 21, which addresses writs of mandamus, prohibition, and other extraordinary writs. Under Rule 21(a)(1), "[a]ll parties in the Superior Court proceeding other than the petitioner are respondents for all purposes." This rule means that, when a petitioner seeks an extraordinary writ pursuant to Rule 21, the petitioner must serve the petition on the other parties to the Superior Court proceeding.

¶ 16    Our Supreme Court Rules do not designate opposing parties in cases for which a pro hac vice attorney is sought as "respondents." Accordingly, Rule 21-1's requirement to serve some applications on "respondents" creates no duty to serve a pro hac vice application on other parties. In addition, a pro hac vice application is not a petition for an extraordinary writ to which Rules 21 and 21-1 apply. A pro hac vice admission proceeding is an administrative matter with no direct effect on the rights or obligations of other parties, and it is more akin to a motion than an action. *See In re David York*, 2010 MP 11 ¶ 1 ("York, an attorney licensed to practice in five U.S. jurisdictions, applied for admission pro hac vice by motion to this Court on July 18, 2007."); *Leis v. Flynt*, 439 U.S. 438, 441 (1979) ("the practice of courts in most States is to allow an out-of-state lawyer the privilege of appearing upon motion").[2] We find that Rule 21-1 does not apply to pro hac vice applications and hold that service of pro hac applications upon the opposing party is not required.

### E. Statement of Need for Representation

¶ 17    We next consider whether the application complies with Supreme Court Rule 73-1(b). This rule requires applications to "describe the reasons the client requires the attorney's representation before the Commonwealth courts."

¶ 18    Torres contends:

> the application does not describe or set forth any reasons why the Commonwealth needs the applicant to represent it in the criminal prosecution as required by NMI SUP. CT. R. 73-1(b). *Id.* The application claims, without any supporting documentation

---

[2]    While the NMI Rules of Civil Procedure are not applicable here, it is worth noting that NMI R. CIV. P. 5(a)(1)(D) says that "a written motion . . . that may be heard ex parte" is exempt from the normal requirement of being "served on every party." The same logic behind not requiring service of such motions in the Superior Court also applies in this Court.

whatsoever, that the applicant has "a long history of prosecutorial experience, including public corruption and white-collar crime." *Id.* This assertion is unsubstantiated, and was not made in an affidavit, a declaration or subject to the penalty of perjury. *Id.* Regardless, no reason or explanation is given articulating how or why the applicant's particular experience is now needed in the criminal case which had been charged and pending for over eleven (11) months prior to filing of the pro hac vice application.

Mot. Reconsideration at 4–5 (emphasis removed).

¶ 19   This argument is without merit. Kingman's application explains the reason for his pro hac vice application is to serve as a special prosecutor in the case against Torres and that he has relevant experience. Torres fails to explain why Kingman's statement needed to have been made under penalty of perjury or why "supporting documentation" of Kingman's experience is required. *Id.* at 4.

¶ 20   Cases from other jurisdictions make clear that some deference is afforded to a litigant's statement of need for a pro hac vice attorney. *See, e.g.*, *Mitchell v. Johnston*, 701 F.2d 337, 351 (5th Cir. 1983) (explaining that pro hac vice applications cannot "be rejected simply because" the court feels additional counsel is unnecessary and that the court "cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests."); *Herrmann v. Summer Plaza Corp.*, 513 A.2d 1211, 1214 (Conn. 1986) ("a court should reluctantly deny an application to appear pro hac vice. A litigant's request to be represented by counsel of his choice, when freely made, should be respected by the court, unless some legitimate state interest is thwarted by admission of the out-of-state attorney.") (internal quotation and citation omitted).[3] We hold that Kingman's application adequately explained why his admission was required.

*F. Declaration*

¶ 21   The third alleged flaw with Kingman's application concerns Glass' declaration. Rule 73-1(e) reads:

An attorney applying for pro hac vice admission under this Rule is required to associate with an attorney who is admitted to practice law in the Commonwealth, who is a member of the Bar, who is in good standing, and who maintains an office in the Commonwealth. A sworn affidavit from the local attorney attesting to compliance with these requirements shall be attached to the application.

¶ 22   Instead of filing an affidavit, Glass submitted a declaration under penalty of perjury. This is permissible under 7 CMC § 3305, which allows for a signed

---

3   This case makes clear that this deference is not unlimited: "the mere fact that a client desires out-of-state counsel to represent him in the courts of this state is not sufficient reason, in and of itself, to warrant granting such permission." *Herrmann*, 513 A.2d at 1214.

declaration in place of an affidavit. It provides that the declaration "may be in substantially the following form: I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _____ at _____, Commonwealth of the Northern Mariana Islands."

¶ 23    Torres acknowledges this law but argues Glass' declaration fails to fulfill its requirements because it "does not state the location where it was executed" and "it is unknown if the declaration was signed inside or outside of the Commonwealth." Mot. Reconsideration at 5–6.[4]

¶ 24    As required by Rule 73-1(e), Glass verified that he is a member of the CNMI Bar Association in good standing with an office in the Commonwealth. He declared under penalty of perjury that the foregoing information is true and correct, provided the date he executed the declaration, typed out his name, and provided a signature.

¶ 25    Torres is correct that the declaration does not explicitly state the location within the Commonwealth where it was executed. However, it does so implicitly. The declaration first states that Glass is "a resident of Saipan" and second states that he "maintains [his] office at the Office of the Attorney General in Saipan, CNMI." One can infer that Glass most likely executed the declaration in Saipan, the location where he lives and works. More importantly, it is baseless speculation that Glass was not in the Commonwealth when he executed the declaration. While it would have been best had the declaration explicitly stated the location of its execution, we hold that this deficiency is not material and does not warrant revoking Kingman's admission.[5]

### G. Pro Hac Vice for Special Prosecutors in Criminal Cases

¶ 26    Finally, we address whether special prosecutors in criminal cases cannot be admitted pro hac vice. Torres contends special prosecutors can be admitted only under Supreme Court Rule 73-3, which is titled "Other Admissions," as opposed to Rule 73-1, which concerns pro hac vice admissions. Specifically, Torres claims the appropriate rule is 73-3(c), which is titled "Special Ethics Prosecutor or Other Limited Purpose Attorney." This rule reads:

> [a]ny attorney the Board deems necessary for the prosecution of
> ethics matters or for other limited purposes, and who the Board

---

[4]    Were it made outside the NMI, the declaration would have to fulfill the requirements of a different statute, 7 CMC § 3307.

[5]    We emphasize that, "While guideposts for determining an attorney's fitness to practice do exist, such as the requirement to be a law school graduate and a member in good standing in other jurisdictions, admission to the Commonwealth bar is solely at the discretion of the Court." *In re David York*, 2010 MP 11 ¶ 11. Although strict compliance with the relevant rules and statutes is a key consideration in deciding whether to admit pro hac vice applicants, it is not an absolute requirement. Admitting an attorney we believe competent to practice law in the Commonwealth, despite some technical flaws in their application, is well within our discretion.

deems fit to practice law in the Commonwealth for the stated limited purposes, shall be admitted to the Bar at the Board's approval to the extent necessary to carry out the specified limited purpose after a written request is made to the Board by the Bar or the Judiciary.

¶ 27     There is no caselaw on this rule, and Torres provides no authorities holding that special prosecutors in criminal cases cannot be admitted pro hac vice. He says:

> A plain language reading of NMI SUP. CT. R. 73-3(c) establishes that it applies to prosecutors for ethics and for other limited purposes. The phrase "for other limited purposes" reasonably includes a special prosecutor in a criminal case, since this Court equates an ethics prosecutor with a criminal prosecutor. *See, e.g.*, *In re Woodruff*, 2014 MP 9 ¶¶ 7-13. In disqualifying the ethics prosecutor in *Woodruff*, this Court reasoned that the ethics prosecutor, like a criminal prosecutor, is a servant of the law "[who] must serve truth and justice first and foremost" and be free from a conflict of interest. *Id.* (quoting *Commonwealth v. Jing Jin Xiao*, 2013 MP 12 ¶ 42).
> Mot. Reconsideration at 6.

¶ 28     Torres' reliance on *Woodruff* is unavailing. While prosecutors in criminal cases and in attorney ethics cases have certain common ethical obligations, that hardly equates the two distinct types of proceedings. Moreover, Rule 73-3(c) involves scenarios where the Bar Association or judiciary makes a written request to the Board of Bar Examiners for admission of the attorney. It is, of course, the executive branch's responsibility, not the Bar Association or judiciary, to initiate criminal cases and decide which attorney should represent the Commonwealth, making it obvious that Rule 73-3(c) has no relevance here. We hold that special prosecutors in criminal cases can be admitted pro hac vice.

### H. When Revoking a Pro Hac Admission is Appropriate

¶ 29     We note that circumstances warranting the revocation of a pro hac vice admission usually involve an act of wrongdoing by the admitted lawyer. For example, the Supreme Court of the U.S. Virgin Islands revoked an attorney's admission after it emerged that she had held herself "out as a licensed Virgin Islands attorney" in communications with the opposing party despite her pro hac vice application still then pending approval. *In re De Luna*, 60 V.I. 683, 687 (V.I. 2014). Similarly, the United States District Court for Kansas revoked the admission of a lawyer for failing to disclose disciplinary actions and expressing a "lack of candor." *United States v. Howell*, 936 F. Supp. 767, 772–74 (D. Kan. 1996).

¶ 30     Here, there is no evidence or allegations of misconduct by Kingman. The application included a certificate demonstrating Kingman is in good standing in Texas. We find no material deficiency warranting the revocation of Kingman's admission. There has not been an intervening change of controlling law, new

evidence, or any clear error or manifest injustice. *Commonwealth v. Guerrero*, 2014 MP 4 ¶ 2.

## V. CONCLUSION

¶ 31      For the foregoing reasons, we DENY the motion for reconsideration of our order admitting Kingman pro hac vice.

SO ORDERED this 14th day of June, 2023.

/s/                         
ALEXANDRO C. CASTRO
Chief Justice

/s/                         
JOHN A. MANGLOÑA
Associate Justice

/s/                         
PERRY B. INOS
Associate Justice

COUNSEL

Victorino DLG Torres, Matthew J. Holley, Viola Alepuyo, and Anthony H. Aguon, Saipan, MP, for Torres.

J. Robert Glass, Saipan, MP, for the Commonwealth.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.